UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. HENRY ERLE CHILDERS, IV and DR. GEORGE BINO RUCKER On Behalf Of Themselves Individually And All Others Similarly Situated, | Civil Action No. <br><br> CLASS ACTION <br><br> COMPLAINT <br><br> DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| v. | |
| THE NEW YORK AND PRESBYTERIAN HOSPITAL, | |
| Defendant. | |

RECEIVED AUG 0 2 2013

## COMPLAINT

Dr. Henry Erle Childers, IV ("Childers") and Dr. George Bino Rucker ("Rucker") (collectively, "Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and all others similarly situated, allege as follows for their Complaint against New York and Presbyterian Hospital ("NYPH" or "Defendant").

### NATURE OF THE ACTION

1. This class action is brought pursuant to Federal Rule of Civil Procedure 23 for fraud, breach of fiduciary duty and other common law torts. The class consists of Plaintiffs, along with other former medical residents and fellows in training in the NYPH Weill Cornell Residency Program (the "Class" or the "Residents") for all or part of the time period from 1995 through June 30, 2001 (the "Class Period.")

2. During the Class Period, NYPH withheld from Plaintiffs' and other Residents' paychecks Federal Insurance Contribution Act ("FICA") taxes, covering both Social Security and Medicare, and paid those amounts over to United States Treasury.

The exact amounts withheld varied based upon the income of the Resident, but generally Residents had several thousand dollars per year withheld.

3. NYPH withheld these FICA taxes because, prior to 2010, the IRS interpreted the Internal Revenue Code (the "Code") to require all hospitals to withhold FICA taxes from the paychecks of medical residents and fellows.

4. For years, medical schools and hospitals argued that medical residents were exempt from FICA tax as students under the Internal Revenue Code's "student exemption," and some challenged the IRS' interpretation of this section of the Code in the courts. In 2010, in response to numerous successful challenges by hospitals, the IRS changed its position and agreed that medical residents were exempt from the FICA tax.

5. As a result, the IRS has returned the withheld FICA taxes *plus interest* from the Class Period to those medical schools and teaching hospitals around the nation that timely filed FICA refund claims. Tens -- if not hundreds -- of thousands of former medical residents and fellows have received, or will receive soon, refund checks from their medical school. The amounts of these refunds will total in the hundreds of millions, if not billions.

6. However, one group of medical residents and fellows -- the Class in this case -- will not be receiving any refunds. The reason for this is that in 1999, NYPH secretly resolved an unrelated tax dispute with the IRS. To induce the IRS to agree to that settlement, NYPH negotiated away its rights to seek the return or refund of any of the FICA taxes it withheld from the Class during the Class Period. This settlement greatly benefitted NYPH but severely prejudiced the Class.

7.  NYPH never notified any of the Class that it had entered into this secret settlement. Had it done so, the individual Class members could have, and would have, filed individual FICA refund claims with the IRS and thus preserved their rights to a refund. By the time the Class learned of the existence of this undisclosed settlement, the time to file individual claims with the IRS had already expired.

8.  As a result of the settlement and NYPH's failure to disclose that it had negotiated away its ability to protect Plaintiffs' refunds, none of the Class has obtained refunds for the FICA taxes wrongfully withheld during the Class Period that they otherwise would have been entitled to. Plaintiffs, on behalf of the Class, seek compensatory damages, pre-judgment interest and punitive damages for NYPH's intentional and malicious misconduct, reasonable attorney's fees and costs and for such other further relief as may be necessary and appropriate.

## JURISDICTION & VENUE

9.  This Court has federal diversity jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds $5 million, (2) there are at least 100 putative class members in the proposed class, and (3) "minimal diversity" is satisfied, meaning that there is at least one class member that is a citizen of a different state from at least one defendant.

10. This Court has personal jurisdiction over Defendant because NYPH is located and does business in New York and a substantial portion of the wrongdoing alleged in this Complaint emanates from New York.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because the events or omissions giving rise to the claims herein occurred in this judicial

district and within this Division of the judicial district, the Defendant maintains an office in the judicial district, and the Defendant has sufficient contacts to be subject to personal jurisdiction in the district.

## THE PARTIES

12. Plaintiff Dr. Henry Erle Childers, IV is an individual living at 35187 Pilotboat Drive, Lewes, DE 19958. He was a resident at NYPH Weill Cornell Residency Program from 1996 through 2001

13. Plaintiff Dr. George Bino Rucker is an individual living at 6124 55th Avenue East, Bradenton, Fl 34203. He was a resident at NYPH Weill Cornell Residency Program from 1996 through 2001.

14. Defendant NYPH is the successor by merger of two former hospitals that employed the individuals enrolled in two medical schools that are now known as the Weill Cornell Campus ("Cornell Medical School") and Columbia Campus ("Columbia Medical School"). Since the merger, NYPH employs medical residents and fellows from both the Cornell Medical School and Columbia Medical School. The Class is made up only of resident and fellows from the Cornell Medical School during the Class Period.

15. NYPH is located 525 East 68th Street in New York City and claims to be the nation's largest not-for-profit, non-sectarian hospital.

## FACTS

**A.   Background To This Class Action**

16. The Code imposes FICA tax, consisting of Social Security and Medicare taxes, on all "wages" paid to an employee by an employer during a calendar quarter.

Employers and employees both are required to pay FICA tax in equal shares. The employer is obliged to withhold from the employee's paycheck the "employee-portion" tax necessary to satisfy the employee's obligation.

17. Although "wages" include all remuneration for "employment," the Code expressly excludes certain services from the definition of "employment." Specifically, a statutory provision relieves students employed by a school, college, or university, and that school, college or university, from the financial burden of paying FICA taxes. This provision is known as the "Student Exemption."

18. Historically, the IRS interpreted the "Student Exemption" to not cover medical residents and fellows. Hospitals and medical schools were thus required to withhold and pay FICA taxes for wages paid to any medical resident or fellow.

19. Beginning in the 1990's, medical schools and teaching hospitals around the country began challenging the IRS' interpretation of the Student Exemption by claiming that medical residents and fellows were entitled to the benefit of the Student Exception. These schools did so because, if the challenges were successful, the schools stood to save millions, if not billions, of dollars in the employer portion of FICA tax alone.

20. While some hospitals and universities were bringing legal actions, many others began filing protective Medical Resident FICA refund claims with the IRS. Those claims were routinely denied by the IRS. However, the filing of these claims preserved the rights to future refunds of both the medical schools' FICA payments were the legal challenges successful or were the law to change. The filing of these claims also protected

the employee portion of the FICA payment - meaning that if the employer portion were returned the employee portion would be as well.

21. While residents themselves could have filed individual protective claims if the medical school did not, this was extremely rare. It was the standard practice in the industry that medical schools and hospitals filed protective FICA claims that preserved the rights of both the medical school and the residents. For example, NYPH began filing FICA protective claims beginning in 1995 on behalf of itself and its residents in the Columbia medical school.

22. In 1998, in *Minnesota v. Kenneth S. Apfel, Comm'r of Social Security*, 151 F.3d 742 (8th Cir. 1998), the Eighth Circuit found that the Student Exemption applied to residents. Numerous decisions favorable to medical schools followed. Upon information and belief, NYPH was closely following this issue and aware of this decision.

23. Despite the rulings such as *Apfel*, for years the IRS continued to refuse to apply the Student Exception to residents and continued to require medical schools and hospitals to pay and withhold FICA taxes from students and fellows. During this time hospitals and medical schools continued to file protective FICA claims and the claims continued to be routinely rejected.

24. In 2008 and 2009, federal courts of appeal issued a series of opinions that again rejected the IRS' position that medical residents were not entitled to the Student Exception.

25. In March 2010, in accordance with these rulings, the IRS finally reversed position and announced that it would agree to exclude medical residents and fellows from

FICA taxes for taxable quarters beginning before April 1, 2005 for those hospitals and medical schools that timely filed refund claims.[1]

26.     As a result of the ruling both hospitals and their residents would be entitled to FICA refund claims for those periods that protective refund claims were filed. However, the IRS did not make refunds directly to the affected residents. Rather, the medical schools and hospitals were permitted to apply for a refund of any FICA taxes withheld during that period, plus interest. The hospitals would keep the employer portion for themselves and had a duty to take reasonable measures to identify, locate and make refund payments to residents entitled to a refund of the "employee portion."

27.     By the time the IRS made this announcement, it was too late for individuals to file FICA returns as the statute of limitations had run. Thus only residents at medical schools that had filed protective FICA claims, or residents that already had filed their own individual claims would be entitled to a refund.

28.     Since the IRS' announcement, former medical residents from all around the country have been receiving refunds of FICA taxes plus interest from their medical school or teaching hospital.

**B.     Facts Specific To The Class' Claims**

29.     Starting with the 1995 tax year, NYPH -- like many hospitals and medical schools all over the country -- began filing protective Medical Resident FICA refund claims. Specifically, in 1995 NYPH filed protective claims for residents from the Columbia Medical School. NYPH failed to file a protective claim in 1996, but it did so

---

[1] April 1, 2005 was the cut-off for the FICA refund period because that it the date that new IRS regulations governing the issue went into effect.

for all years between 1997 and 2005 for residents from the Columbia Medical School. Those protective claims were filed on behalf of both NYPH and its residents.

30. NYPH handled the FICA refund clams with respect to the Cornell Medical School differently. In the late 1990's, NYPH was in what it has since described as an "unrelated" tax dispute with the IRS. As part of the settlement of that tax dispute, and to induce the IRS to enter into that agreement, in 1999 NYPH agreed to not challenge the FICA withholdings on behalf of itself or its residents, and not file protective refund claims on behalf of itself or its residents for entire the Class Period. The settlement greatly benefitted NYPH.

31. If not for the settlement, NYPH would have filed FICA protective claims. Indeed, once the Class period expired, beginning on July 1, 2001, NYPH immediately began filing protective FICA refund claims for itself and all Cornell Medical School residents and fellows and did so all the way through 2005. As a result, those that were residents or fellows during that period have received, or will be receiving shortly, FICA refund checks from NYPH. However, those residents during the Class Period are not receiving refunds.

32. Following the IRS's determination in March 2010 that it would allow certain FICA Refund Claims for tax periods prior to April 1, 2005, NYPH retained Deloitte Tax LLP to assist it in the submission and settlement of FICA Refund Claims, and to solicit consent forms from residents and fellows authorizing NYPH to act on their behalf in obtaining the refunds only for periods, *i.e.* from July 1, 2001 through June 30, 2005 for Cornell students and 1995 and 1997-2005 for Columbia students, for which the NYPH had filed FICA Refund Claims.

33. At some point during 2011, NYPH submitted "perfected" FICA Refund Claims to the IRS. Following receipt of the perfected FICA Refund Claims, the IRS proceeded to determine the eligibility of these claims and to verify the amounts to process refunds plus statutory interest.

34. According to NYPH, the IRS has accepted perfected FICA Refund Claims for all years filed by the Hospital except tax years 2003 and 2004. The IRS has completed its processing of NYPH's perfected FICA Refund Claims and has remitted the refunds to the NYPH for distribution for most of the quarters claimed. NYPH claims to be in the midst of processing the refunds it has received for distribution to eligible Medical Residents and expects that process to be completed during the summer of 2013.

35. Unfortunately the members of the Class will not be receiving refunds. This is because in 1999 the NYPH gambled and lost. It made a determination that, despite rulings by various courts including the 8th Circuit, the legal challenges mounted by hospitals and medical schools to the Student Exemption were unlikely to be successful. Thus, in order to obtain preferential terms in its settlement of another tax dispute with the IRS, it was willing to negotiate away its rights to seek or obtain FICA refunds from the Class Period. NYPH turned out to be wrong and as a result it lost millions -- if not tens of millions -- in potential refunds for the employer portion of the FICA tax it paid.

36. If NYPH had only negotiated away its own rights, the damage from its miscalculation -- while embarrassing -- would have been limited to the hospital itself. However, the hospital also negotiated away its ability to seek refunds of the employee portion of the FICA tax, thus costing its former residents and fellows millions -- if not

9

tens of millions. Unlike NYPH, the former residents and fellows received no consideration from the settlement. Nor did NYPH notify or obtain consent from its former residents and fellows before entering into the settlement.

37. To make matters worse, NYPH kept its settlement with the IRS a secret and failed to disclose to medical residents and fellows that it had agreed with the IRS not to file protective claims on their behalf. As result, the medical residents never knew that they had to file their own individual protective claims to protect their rights to potential future FICA refunds. Upon information and belief, no other medical school or hospital in the country negotiated away to the IRS the FICA refund rights of its residents and fellows.

38. By the time that NYPH finally disclosed to its students the terms of its settlement with the IRS, the statute of limitations on FICA refund claims already had expired. As a result, it was too late for any of the Class to file FICA refund claims. Accordingly, none of the Class are eligible to receive FICA tax refunds.

## PLAINTIFFS' CLASS ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a proposed class consisting of all individuals who were medical residents or fellows from the Cornell Medical School at NYPH at any time during the Class Period. Excluded from the Class are those former residents or fellows, if any, who filed individual protective FICA claims with the IRS for any of the years during the Class Period that they were a resident or fellow at NYPH and have received refunds from the IRS.

40. Upon information at belief, NYPH employed over a thousand residents and fellows per year during the Class Period. Thus the members of the proposed Class are so numerous that joinder of all members is impracticable. Plaintiff believes that there are several thousand members in the proposed Class. Members of the proposed Class may be identified from records maintained by NYPH.

41. Plaintiffs' claims are typical of the claims of the members of the proposed Class as all members of the proposed Class are similarly affected by NYPH's wrongful conduct as alleged herein.

42. Plaintiffs will fairly and adequately protect the interests of the members of the proposed Class and have retained counsel competent and experienced in complex class action and other complex litigation.

43. Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class. Among the questions of law and fact common to the proposed Class are:

   a. whether NYPH defrauded the proposed Class members when it failed to disclose the terms of its secret settlement with the IRS which contained terms that severely prejudiced the rights of the proposed Class members;

   b. whether NYPH had a fiduciary duty to the class members, and if so, whether NYPH violated that fiduciary duty when it (i) negotiated a secret settlement with the IRS that benefitted NYPH but severely prejudiced the rights of the proposed Class members and (ii) failed to disclose the terms of the settlement to the proposed Class;

   c. whether NYPH breached its implied covenant of good faith and fair

dealing with the proposed Class;

d. whether NYPH was negligent;

e. whether the members of the proposed Class have sustained damages and, if so, the appropriate measure thereof.

f. whether punitive damages should be awarded against NYPH for its intentional and malicious misconduct.

44. Notice can be provided to the Class by means of mail to proposed Class members' current address maintained by NYPH and by publication of a form of notice similar to those customarily used in other class action litigations.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members is impracticable, and this action will be manageable as a class action.

## FIRST CAUSE OF ACTION – FRAUD

46. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

47. NYPH was obligated to disclose to Plaintiffs the material fact that it had entered into a secret settlement agreement with the IRS that severely prejudiced the rights of Plaintiffs to obtain FICA tax refunds, but it failed to make such disclosure.

48. Given NYPH's position as employer who withheld the FICA tax from Plaintiffs, NYPH's own interest in obtaining the FICA tax refund and NYPH's superior position to be able to pursue FICA refunds on behalf of its resident, NYPH had a duty to disclose the existence of the settlement.

49. NYPH's failure to disclose this information was knowing or extremely reckless and was motivated, at least in material part, by concern that disclosure that it had negotiated away the rights of its medical students and fellows for its own benefit would have caused it embarrassment in the industry, possibly lost students, residents and fellows, or created difficulty in attracting future students, residents and fellows.

50. Plaintiffs relied on the material omission when they failed to file their own individual FICA refund claims with the IRS. Had NYPH disclosed the terms of its settlement with the IRS, Plaintiffs would have filed such claims to protect their rights to the FICA refund.

51. As a direct and proximate cause of NYPH's material omission, Plaintiffs sustained pecuniary loss.

## SECOND CAUSE OF ACTION – CONSTRUCTIVE FRAUD

52. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

53. NYPH made a false representation of fact when it failed to disclose the material fact that it had entered into a secret settlement agreement with the IRS that severely prejudiced the rights of Plaintiffs to obtain FICA tax refunds.

54. Given NYPH's position as employer who withheld FICA tax from Plaintiffs, NYPH's own interest in obtaining the FICA tax refund and NYPH's superior position to be able to pursue FICA refunds on behalf of its resident, there existed a fiduciary or confidential relationship between NYPH and its residents and fellows which warranted the trusting party to repose their confidence in NYPH and therefore to relax their care and vigilance they would ordinarily exercise in the circumstances.

13

55.    Plaintiffs relied on the material omission when they failed to file their own individual FICA refund claims with the IRS. Had NYPH disclosed the terms of its settlement with the IRS, Plaintiffs would have known that they were required to file such claims to protect their rights to the FICA refund.

56.    As a direct and proximate cause of NYPH's material omission, Plaintiffs sustained pecuniary loss.

### THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

57.    The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

58.    Given NYPH's position as employer who withheld FICA tax from Plaintiffs, NYPH's own interest in obtaining the FICA tax refund and NYPH's superior position to be able to pursue FICA refunds on behalf of its resident, there existed a fiduciary or confidential relationship between NYPH and its residents and fellows which warranted the trusting party to repose their confidence in NYPH and therefore to relax their care and vigilance they would ordinarily exercise in the circumstances.

59.    NYPH breached that duty twice. First, when it entered into entered into a secret settlement agreement with the IRS that benefitted the hospital but severely prejudiced the rights of Plaintiffs to obtain FICA tax refunds to the benefit of NYPH. And second, when it failed to disclose the existence of the terms of that settlement to Plaintiffs until after the time for Plaintiffs to file their own FICA refund claims had expired.

60.    As a direct and proximate cause of NYPH's breach of fiduciary duty Plaintiffs sustained pecuniary loss.

## FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

61. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

62. Given NYPH's position as employer who withheld FICA tax from Plaintiffs, NYPH's own interest in obtaining the FICA tax refund and NYPH's superior position to be able to pursue FICA refunds on behalf of its resident, there existed a special of privity-like relationship between NYPH and its residents and fellows imposing a duty on NYPH to impart correct information to Plaintiffs.

63. NYPH breached that duty when it entered into entered into a secret settlement agreement with the IRS that severely prejudiced the rights of Plaintiffs to obtain FICA tax refunds to the benefit of NYPH and failed to disclose the existence of the terms of that settlement to Plaintiffs until after the time for Plaintiffs to file their own FICA refund claims had expired.

64. Plaintiffs reasonably relied on the material omission when they failed to file their own individual FICA refund claims with the IRS. Had NYPH disclosed the terms of its settlement with the IRS Plaintiffs would have known that they were required to file such claims to protect their rights to the FICA refund.

65. As a direct and proximate cause of NYPH's negligent misrepresentation, Plaintiffs sustained pecuniary loss.

## FIFTH CAUSE OF ACTION – NEGLIGENCE

66. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

67. Given NYPH's position as employer who withheld FICA tax from Plaintiffs, NYPH's own interest in obtaining the FICA tax refund and NYPH's superior position to be able to pursue FICA refunds on behalf of its resident, NYPH owed Plaintiffs a duty of reasonable care.

68. NYPH breached that duty twice. First when it entered into entered into a secret settlement agreement with the IRS that severely prejudiced the rights of Plaintiffs to obtain FICA tax refunds to the benefit of NYPH. And second when it failed to disclose the existence of the terms of that settlement to Plaintiffs until after the time for Plaintiffs to file their own FICA refund claims had expired.

69. As a direct and proximate cause of NYPH's negligent misrepresentation Plaintiffs sustained pecuniary loss.

## SIXTH CAUSE OF ACTION – BREACH OF CONTRACT

70. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

71. In connection with the educational services provided by NYPH to Medical Residents and the employment relationship between the parties, there is an implied contract on the part of NYPH to Plaintiffs and the other members of the Class that NYPH will take all reasonable measures to collect and refund any FICA taxes wrongfully withheld from Plaintiffs. NYPH breached that implied contract when it failed to do so.

72. There is also an express contractual relationship between the parties and every contract contains an implied covenant of good faith and fair dealing. NYPH breached its that covenant of good faith and fair dealing with Plaintiffs first when it entered into entered into a secret settlement agreement with the IRS that severely

prejudiced the rights of Plaintiffs to obtain FICA tax refunds to the benefit of NYPH, and second when it failed to disclose the existence of the terms of that settlement to Plaintiffs until after the time for Plaintiffs to file their own FICA refund claims had expired.

73. As a direct and proximate cause of NYPH's breach of contract Plaintiffs sustained pecuniary loss.

### SEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT

74. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

75. NYPH was unjustly enriched at Plaintiffs' expense when, for purposes of resolving its unrelated tax dispute with the IRS, it secretly bargained away Plaintiffs' rights to obtain FICA tax refunds.

76. As a direct and proximate cause of NYPH's misconduct Plaintiffs sustained pecuniary loss.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other individuals similarly situated, respectfully request that this Court find in their favor and against NYPH, and:

A. declare this action to be a proper class action maintainable pursuant to Federal Rule of Civil Procedure 23 and declaring Plaintiffs to be a proper representatives of the Class and Plaintiffs' counsel as Lead Counsel;

B. award compensatory damages in favor of Plaintiffs and the other Class members against NYPH for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including punitive damages and interest;

C.  award Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including interest, counsel fees and expert fees; and

D.  award such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Respectfully submitted,

Steven K. Barentzen
PCT Law Group, PLLC
1575 Eye Street, NW, Suite 300
Washington, DC 20005
T: (202) 289.4333
F: (202) 289.8450
sbarentzen@pctlg.com

*Attorneys for Plaintiffs*